UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS SHADLICH,

    Plaintiff

v.

MAKERS NUTRITION, LLC,

    Defendant

Case No.: 8:20-cv-389-T-60-TPB-CPT

## DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF LAW

Defendant, Makers Nutrition, LLC, moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and states:

### INTRODUCTION

Makers Nutrition, LLC is a leading supplier of custom manufactured nutraceutical supplements. In 2015 or 2016, Nicholas Shadlich contacted Makers Nutrition because he was working in the nutraceutical industry and looking to invest in nutraceutical products. When he contacted Makers Nutrition, Mr. Shadlich asked to be called on his cellular telephone for this business purpose. This is clear from the exhibits to the Complaint.

As a matter of law, the TCPA and the National Do-Not-Call Registry protect *consumers,* not businesses or business people. The TCPA does not bar phone calls made to cellular phones that are used for business purposes. Accordingly, Mr. Shadlich has no standing to bring a claim under the TCPA, and he has failed to state a claim under the TCPA. For this reason and others discussed below, the Complaint should be dismissed.

**FACTUAL BACKGROUND & PROCEDURAL HISTORY**

1. Plaintiff has asserted violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) as well as a common law cause of action for invasion of privacy.

2. Plaintiff alleges that he is the user of a cellular telephone with the number 352-817-6802. *See* Complaint, ¶¶ 7-8.

3. Plaintiff gave the cellular telephone number to Defendant when he was "potentially looking to invest in product." *See* Complaint, Ex. B.

4. Plaintiff was once in the nutritional supplements business. In fact, he was "in the industry" when he gave the cellular telephone number to Defendant. *See id.*

5. Plaintiff was once in the nutritional supplements business, is now a health care coverage consultant, and holds out the cellular telephone number in question as his business number. These facts are irrefutably demonstrated by four documents that are attached[1] to this motion, to wit:

---

[1] When considering a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of public records and certain facts, without converting the motion to dismiss to a motion for summary judgment because the authenticity of such documents are capable of accurate and ready determination. *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1166 n.11 (11th Cir. 1995)); Fed.R.Evid. 201; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *Hamze v. Sgt. Steel*, No. 12-61356-Civ-SCOLA, 2014 U.S. Dist. LEXIS 196749, at *3-4 (S.D. Fla. Aug. 18, 2014). Some courts have held that internet content, including content generated by a party, is appropriate for consideration on a 12(b)(6) motion. *See Jeandron v. Bd. of Regents of the Univ. Sys. of Md.*, 510 F. App'x 223, 227 (4th Cir. 2013) (holding that court may take judicial notice of information publicly announced on a party's web site); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (holding that it is "not uncommon for courts to take judicial notice of factual information found on the world wide web).

- Exhibit 1: Plaintiff's LinkedIn profile showing employment as a health coverage consultant and as co-founder and president of Vitabrothers Nutrition;

- Exhibit 2: Plaintiff's Facebook profile advertising his services as a health coverage consultant containing the telephone number in question;

- Exhibit 3: Plaintiff's Twitter profile advertising his services as a health coverage consultant containing the telephone number in question; and

- Exhibit 4: Plaintiff's profile with US Health Group advertising his services as a health coverage consultant containing the telephone number in question.

6. Plaintiff alleges that he received 98 telephone calls from Defendant after he placed that cellular telephone number on the National Do Not Call Registry in the two years from May 9, 2018 to date. *See* Complaint, ¶ 14.

7. Plaintiff alleges that he received 71 calls from Defendant after he requested that Defendant place that cellular telephone number on the Defendant's Do Not Call List in the approximately 19 months from October 1, 2018 to date. *See* Complaint, ¶ 21.

## MEMORANDUM OF LAW

### I. Standard of Review

"In considering a motion to dismiss, the Court must "accept well-pleaded facts and reasonable inferences drawn from those facts." *Carter v. Frito-Lay, Inc.*, 144 F. App'x 815, 818 (11th Cir. 2005), *quoting Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). However, "conclusory" statements and "[t]hreadbare" allegations will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1883 (2017). Courts need not credit "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Rankin v. Bd. Of Regents of Univ. Sys. of Georgia*, No. 17-14483, 2018 WL 1974995, at *1 (11th Cir. Apr. 26, 2018), *citing Oxford Asset*

3

*Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Additionally, unwarranted deductions of fact made upon information and belief are not admitted as true for the purpose of testing the sufficiency of the allegations. *Daisy, Inc. v. Pollo Operations, Inc.*, No. 2:14-cv-564-FtM-38CM, 2015 WL 1418607, at *6 (M.D. Fla. Mar. 27, 2015), *citing Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009).

## II. Counts I and II Should Be Dismissed for Failure to State a Claim and Lack of Subject Matter Jurisdiction

According to the Complaint, all of the telephone calls at issue were made to Plaintiff's cellular telephone. There can be no dispute that Plaintiff has used his cellular telephone for business purposes or, most important of all, that Plaintiff gave his cellular telephone number to Defendant for a business purpose. The Telephone Consumer Protection Act protects *consumers*; it does not protect business people or people who use a telephone number for business purposes, because such use places the number outside of the TCPA's "residential telephone" definition. *See Shelton v. Target Advance LLC*, 2019 U.S. Dist. LEXIS 64713, Case No. 18-cv-2070 (E.D. Pa. April 16, 2019) (granting a motion to dismiss similar claims; holding that plaintiff lacked standing because he had used his cellular telephone for business purposes); *Bank v. Independence Energy Group LLC*, 2015 U.S. Dist. LEXIS 96532, Case No. 12-CV-1369 (E.D.N.Y. July 23, 2015) (involving a landline and claims under 47 U.S.C. § 227(b)l)(B) which is not alleged by Shadlich, but follows the same rationale).

In our case, Shadlich has held his cellular telephone out to the world – and the Defendant – as his business telephone. As a result, Counts I and II must be dismissed.

### III.  Count III Should Be Dismissed for Failure to State a Claim

Florida recognizes three categories of privacy torts: "(1) appropriation, which is the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion, which is physically or electronically intruding into one's private quarters; [and] (3) public disclosure of private facts, which is the dissemination of truthful private information which a reasonable person would find objectionable." *See Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). The facts as alleged by Plaintiff are aimed at establishing a claim of invasion of privacy by intrusion upon seclusion, but do not rise to the level required.

Florida law defines intrusion as "physically or electronically intruding into one's private quarters." *Ginsberg*, 863 So. 2d at 162. The focus of the tort is "the right of a private person to be free from public gaze." *Id*. In this instance, Plaintiff deliberately and repeatedly put his information out into the public gaze and, indeed, invited the public to call him for business purposes. Accordingly, Defendant could not have intruded upon any alleged seclusion that ceased to exist when Plaintiff opened his number up to communication from the public at large.

Moreover, even if a telephone call constitutes a physical or electronic intrusion for purposes of the Florida tort of invasion of privacy, the undisputed facts in this case do not rise to the level of outrageous and unacceptable conduct required by Florida law to support a cause of action for invasion of privacy. To constitute an invasion of privacy, the intrusion must be highly offensive to a reasonable person. *See Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062-63 (Fla. 5th DCA 1991). "[I]n measuring the unacceptable conduct upon which a claim is made," causes of action for invasion of privacy "share certain similarities" with

5

claims for intentional infliction of emotional distress. *Id.* at 1062. "The threshold test to be followed in assessing behavior claimed to constitute the 'intentional infliction of emotional distress,' is whether such behavior is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency,'" *Id.* (quotation omitted). "[A]n evaluation of the claimed misconduct must be undertaken to determine, as objectively as is possible, whether it is 'atrocious, and utterly intolerable in a civilized community.'" *Id.* (quotation omitted). "That burden falls to the judiciary-it is a matter of law, not a question of fact." *Id.* (quotation omitted); *see also id.* at 1063 (holding trial court properly dismissed complaint which failed to allege conduct sufficiently outrageous to constitute intrusion); *Vance v. Southern Bell Tel & Tel Co.*, 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (under Florida law, whether conduct is sufficiently outrageous is a "legal question in the first instance for the court to decide as matter of law").

In this District, a similar pattern of calls was held—as a matter of law—to not rise to the level required to maintain a claim. *See Oppenheim v. I.C. Sys.*, 695 F. Supp. 2d 1303, 1308-10 (M.D. Fla. 2010) (holding that thirty-five to forty telephone calls to Oppenheim's residence over a period of approximately three months did not rise to the requisite level of offensiveness). The *Oppenheim* court relied principally upon two Florida state court cases in reaching this decision. In *Stoddard*, the plaintiff relied on a series of telephone calls to support his claim of invasion of privacy. 573 So. 2d at 1061-62. To determine whether the calls rose to the requisite level of unacceptable conduct, the *Stoddard* court relied on *Kent v. Harrison*, 467 So. 2d 1114, 1114-15 (Fla. 2d DCA 1985). *Kent* is an intentional infliction of emotional distress case "in which a defendant initiated and for several months continued

6

a campaign of telephonic harassment in the aftermath of a verbal conflict." *Stoddard*, 573 So. 2d at 1062. The conduct in *Kent* was found to be insufficient to support the claim of intentional infliction of emotional distress:

> Thus, we harbor no doubt that the telephone calls received by Kent were offensive and impaired him, his tranquility, and the peacefulness of his home. We are no less persuaded that Harrison's conduct was intentionally designed and undertaken to distress and annoy Kent. In fulfilling the responsibility assigned to us in *Metropolitan Life Insurance Company v. McCarson*, 467 So. 2d 277 (Fla. 1985), however, we cannot conclude that such behavior was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." 467 So. 2d at 279. Moreover, Kent's state of vexation, irritation, and agitation cannot be the foundation for a finding that Harrison's behavior is within the range marked out in Metropolitan by the standard of "atrocious and utterly intolerable in a civilized community." *Id*.

*Kent*, 467 So. 2d at 1115, quoted in *Stoddard*, 573 So. 2d at 1062-63.

Applying the "threshold test" adopted in *Stoddard*, the determination of whether Defendant's telephone calls to Plaintiff were sufficiently offensive to support Plaintiff's claim of invasion of privacy depends on whether the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." 573 So. 2d at 1062-63. The *Oppenheim* Court concluded that it was not, since the thirty-five to forty telephone calls to Oppenheim's residence over a period of approximately three months were no more offensive than the "campaign of telephonic harassment" which lasted "for several months" in *Kent*. *Oppenheim v. I.C. Sys.*, 695 F. Supp. 2d 1303, 1308-10 (M.D. Fla. 2010) (*quoting Kent*, 467 So. 2d at 1114).

Plaintiff may have found Defendant's calls to be annoying or bothersome, but "those calls did not rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion." *Oppenheim v. I.C. Sys.*, 695 F. Supp. 2d 1303, 1308-10 (M.D. Fla. 2010). Count III must, therefore, be dismissed.

## **CONCLUSION**

Wherefore, based on the foregoing reasons and authorities, Defendant respectfully submits that this Court should dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully submitted,

/s/ John L. Dicks II
John L. Dicks II
Florida Bar No.: 89012
Primary Email: john.dicks@akerman.com
Secondary Email: judy.barton@akerman.com
Mallorie R. Bonti, Esq.
Florida Bar Number: 1007973
Primary Email: mallorie.bonti@akerman.com
Secondary Email: nicole.emmett@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, FL 33602-5250
Phone: (813) 223-7333
Fax: (813) 223-2837

Christopher A. Raimondi (admitted *pro hac vice*)
Primary Email: craimondi@raimondi-law.com
Secondary Email: info@raimondi-law.com
**RAIMONDI LAW, P.C.**
552 Broadway
Massapequa, New York 11758
Phone: (516) 308-4462
Fax: (516) 308-4463
*Attorneys for Defendant, Makers Nutrition, LLC*

**CERTIFICATE OF SERVICE**

  I hereby certify that on May 28, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided notice to all CM/ECF participants in this case.

              */s/ John L. Dicks II*
              Attorney

53265723;1